UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN WILSON and MELISSA WILSON, husband and wife, individually, and as the Guardians of the Minor Child Plaintiff, J.C.W.,<br><br>      Plaintiff,<br><br>      v.<br><br>SALMON SCHOOL DISTRICT #291; JENNIFER COOK, in her individual and official capacity; BOB ENDERTON, in his individual and official capacity; HUMAN DYNAMICS AND DIAGNOSTICS LLC, an Idaho limited liability company; and RACHEL McDONALD, as the natural parent and guardian of E.R., a minor child,<br><br>      Defendants. | Case No. 4:16-cv-00117-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Dkt. 28), Defendants' Motion to Strike (Dkt. 40), Plaintiffs' Motion to Amend (Dkt. 36), and Plaintiffs' Motion to Amend for Punitive Damages (Dkt. 29). The Court heard oral argument on July 25, 2017. For the reasons explained below, the Court will: (1) grant Plaintiffs' Motion to Amend (Dkt. 36), (2) deem moot Plaintiffs' Motion to Amend for

Punitive Damages, (3) grant in part and deny in part Defendants' Motion for Summary Judgment (Dkt. 28), and (4) deem moot Defendants' Motion to Strike (Dkt. 40).

## BACKGROUND

**1.  Factual Background**

Most of the facts in this section are undisputed and material to the resolution of the pending motions. Where material facts are in dispute, the Court has included the Plaintiffs' version of the facts so long as that version is not contradicted by clear evidence in the record in line with the Rule 56 requirement that the Court consider the facts in the light most favorable to plaintiffs.

**A.  *J.C.W.'s Injury***

On April 14, 2015. E.R., a first-grade student at Pioneer Elementary School, stabbed J.C.W., a second-grade student, in the eye with a stick during recess. On the date of the injury, the playground staff was short-handed. *Cook Dep.* 162:24–163:9, Dkt. 28-4. Ordinarily, four adults supervise the playground area with areas of overlapping visibility. *Id.* at 155:6–18. On the day of the injury, Defendant Bob Enderton, a paraprofessional and substitute teacher, had been assigned by Defendant Jennifer Cook, the Principal of Pioneer Elementary School, to oversee the front area of the schoolyard. Enderton claimed that there were only two adults supervising the playground area. *Stephenson Aff., Ex. A.* at 3.

As lunch ended, Enderton saw three boys carrying J.C.W. to the school. *Id.* at 38:10–16, Dkt. 28-4. Enderton noticed J.C.W. bleeding and instructed the boys to

continue carrying him into the office. *Id.* Enderton did not observe how J.C.W. was injured. Prior to April 14, 2015, Enderton had no previous experience with E.R. and was unaware of any disciplinary action concerning E.R. *Id.* at 42:1–7.

Once J.C.W. was in the office, Cook observed J.C.W.'s injury and was told that J.C.W's mother, Melissa Wilson, had already been called. *Cook Dep.* 140:8–10, 139:10–140:7, Dkt. 28-4. There was a debate about whether to call 911. Cook testified that she was ready to call 911, but someone told her the mother was on the way and that Cook had permission to transport him. *See Cook Dep.* at 140:14–141:15, Dkt. 28-4. She testified that she received no training on what to do when there was a serious injury at the school. *Id.* at 143:25–144:4.

Later at the hospital, J.C.W. described the incident to his mother, recounting that he was first hit in the leg and then E.R. poked him in the eye. *Wilson Dep.* at 53:6–55:24, Dkt. 28-4. J.C.W.'s injury required at least two surgeries and resulted in permanent blindness in his right eye. J.C.W. also suffered from emotional distress.

**B.     *E.R.'s Prior Behavior***

Prior to the altercation with J.C.W., E.R. had a disruptive behavioral pattern at Pioneer Elementary School. Although the date is unclear, there is evidence that E.R. struck a young girl in the face some time prior to the incident with J.C.W. *See Summers Dep.* at 25:1–25, Dkt. 35-5. In addition, in the Fall of 2014, E.R. was "acting out in class." *Cook Dep.* at 112:10–18, Dkt. 35-7. E.R.'s teacher, Melissa Stephenson, stated that around the end of November 2014, E.R. was struggling to get back into a structured

routine. *Stephenson Dep.* at 10:14–12:13, Dkt. 35-13. She also noted that E.R. would sometimes be "in students' faces arguing" and was usually not physical, although, he might give a "quick push." *Id.* at 14:11–23. Stephenson also noted increased irritability in E.R. around Spring Break in 2015. *Id.* at 17:17–18:12.

On April 2, 2015, Stephenson observed E.R. in an argument with two adult members of the After School Promise program. *See Stephenson Dep.* at 22:19–23:5, Dkt. 35-13. He began screaming and yelling at Stephenson and others and threw his backpack down the hall. *Id.* at 23:7–24. In addition, he flailed his arms around and threw himself on the ground. *Id.* at 24:4–22.

Around April 6, 2015, Cook became aware that E.R. had thrown a rock at an after-school program supervisor, Woehlke. *Cook Dep.* at 116:20–117:9; 118:1–119:3, Dkt. 28-4. Woehlke was not aware of E.R. throwing rocks at him and was only made aware of it by another student. *Woehlke Dep.* at 26:5–11, Dkt. 35-14. He also states that he is unaware of whether it was a rock or gravel that was thrown. *Id.* at 29:7–18. The next day, E.R. got angry and pushed or punched paraprofessional, Natelson. *Cook Dep.* at 123:14–125:8, Dkt. 35-7.

On or around April 7, 2015, Stephenson approached Cook to state her concerns with E.R.'s aggressive and violent behavior. *Stephenson Dep.* at 29:1–31:22, Dkt. 35-13. She expressed concerns that both of the incidents had been physical and that it was unclear how he might act around his peers. *Id.*

On April 8, Officer Madsen, the substitute SRO, met with E.R., his mother, and Cook regarding the rock-throwing incident. *Madsen Dep.* at 17:3–16, Dkt. 35-17. Madsen discussed that throwing rocks could be a criminal action and instructed him about appropriate behavior. *Id.* at 18:7–24. Madsen indicated that she does not know of any other disciplinary action taken by Cook. *Id.* at 19:24–20:1. Stephenson stated that besides the meeting with Madsen, Cook took no other disciplinary action. *See Stephenson Dep.* at 36:2–21, Dkt. 35-13. In addition, there is no record of any discipline imposed by Cook and no records of the incidents placed in E.R.'s files or within PowerSchool, the District's program for reporting such incidents.

### C. *The School Policy and Cook's Training*

At the time of the incident, the Salmon School District #291 ("the District") had several policies addressing student conduct and behavior. One provision stated that "hazing, harassment, intimidation, menacing or bullying by students . . . is strictly prohibited and will not be tolerated in the district." *See Phillips Aff., Ex. C.* at 159, Dkt. 35-8. The District's policy included a section titled "Student Discipline." *Id.* at 169. This section states several relevant polices including "[1] the behavior of students while on school property or under school supervision is the direct responsibility of the classroom teacher and the building principal . . . . Repeated or serious violations of student behavior rules must be reported to the Superintendent, who shall provide the Board with a full report of all cases involving serious personal injury," and "[2] a student shall not engage in disrespectful conduct towards teachers, administrators or staff . . . ."

The District did not train Cook prior to taking her first position with the School District. *See Cook Dep.* at 27:12–15, Dkt. 28-4. Further, Cook stated that the District did not train her on administering discipline or documenting bullying incidents. *Id.* at 27:20–28:10. Cook received the policy handbook which contained these relevant provisions and others, but she did not review them nor was she responsible for knowing or understanding the policies. *Id.* at 28:11–29:5. In addition, Cook does not recall referring to the policy handbook when administering discipline, and she testified that she was unaware of the procedures. *Id.* at 26:6–30:11. There is also some evidence that the District did not give Cook any particular training on policies concerning the discipline of elementary-aged students. *Id.* at 40:11–14.

J.C.W. and his parents ("The Wilsons") brought this suit against the District, Cook, Enderton, and McDonald, E.R.'s mother, alleging violation of Idaho tort law and federal rights under § 1983.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

1.  **Motion to Amend the Complaint – Dkt. 36**

The Wilsons filed a motion to amend their complaint after the deadline set by the Case Management Order (Dkt. 17). Motions to amend filed after a scheduling order are governed, not by the liberal provisions of Fed. R. Civ. P. 15(a), but instead, by the more restrictive provisions of Fed. R. Civ. P. 16(b) requiring a showing of "good cause." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992). This standard "primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

Here, the Court finds that there is good cause to permit the Wilsons to amend their complaint. Rule 1 of the Federal Rule of Civil Procedure states that all the federal rules "should be construed, administered, and employed" to "secure a just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. A court may grant a delayed motion based on an overall evaluation of "[t]he rights of the parties, the ends of justice, and judicial economy." *United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007). In addition, district courts are "given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . ." *Johnson*, 975 F.2d at 607.

When considered under these guidelines, the Wilsons have good cause to amend their complaint in this case. The Wilsons' proposed amended complaint does not present

any new theories of liability which would require additional discovery or motions. It only clarifies the party — who is already a party to the lawsuit — against whom the claim was brought. Regardless of whether *Hoffer* applied, the Wilsons would be required to prove that Cook acted recklessly, willfully, and wantonly. If the Wilsons have not established a genuine issue of material fact regarding whether Cook's conduct was reckless, willful and wanton, then Defendants are entitled to summary judgment on Count One and Count Three regardless of whether the named defendant is the District or Cook.

Moreover, no further discovery is necessary. On July 20, 2016, within Defendants Salmon School District, Cook, and Enderton's First Interrogatories and Requests for Production of Documents, Defendants' Interrogatory No. 4 states, "In your Complaint, Count One, it alleged that Defendants Salmon School District, Jennifer Cook, and Bob Enderton were negligent . . . ." *Phillips Aff., Ex. P* at 5, Dkt. 35-21. This shows that Defendants were on notice of the claims being against Cook and Enderton and acknowledged as much.

Further, the original complaint clearly stated that Cook is a party in the § 1983 claim that requires a showing of "deliberate indifference." The "reckless, willful, and wanton" standard shares many of the same requirements as the "deliberate indifference standard." They both require some showing of knowledge by the party and a substantial and likely risk of harm. Therefore, because the Defendants should have performed discovery for the deliberate indifference claim, it is unlikely that further discovery would be needed to defend a reckless, willful, or wanton claim. Defendants' motion for

summary judgment asserted a lack of evidence to support a claim of reckless, willful or wanton conduct. Defendants cannot claim that they did not have notice when they defended the issue in the summary judgment proceedings.

While the complaint should have been more precisely drafted and included Cook under counts I and III, the Court believes that addressing the substance of the claim against Cook will result in a "just, speedy, and inexpensive" resolution of the case. Therefore, the Court grants the motion to amend the complaint (Dkt. 36).

Finally, as part of the motion to amend, the Wilsons agree that the District is immune in Count I and that Enderton is not liable under any of the Counts. Therefore, the Court will not discuss those claims in this decision.

**2.    State Law Claims**

   **A.    *The District*** 

Defendants argue that the District is immune from allegations of failure to train because such failure is a discretionary function. Idaho Code 6-904(1) affords immunity to governmental entities for any claim which arises out of "the exercise or performance or the failure to exercise a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Idaho Code § 6-904(1). Defendants suggest that the decision in *Brooks I* applies here. *Brooks v. Logan (Brooks I)*, 903 P.2d 73 (Idaho 1995) (Superseded by statute). In *Brooks I*, the court held that a decision to implement a student safety program, including training teachers in the

district, was a discretionary function. Thus, the district was not liable for a student suicide.

This case is distinguishable from *Brooks I*. In *Brooks I*, the school district did not have a policy on suicide prevention, and therefore the decision not to implement one was a discretionary function. Here, the District did have a policy on the relevant behavior which led to J.C.W.'s injury. It stated that "[h]azing, harassment, intimidation, menacing or bullying by students, staff or third parties is strictly prohibited," and included general disciplinary instructions and reporting guidelines. *See Phillips Aff., Ex. C*, Dkt. 35-8. The discretionary function exception to liability under the ITCA does not apply to negligent operational decision making, nor does it shield the negligent implementation of an established policy. *Czaplicki v.Gooding Joint School Dist. No. 231*, 775 P.2d 640 (Idaho 1989).

There is evidence in the record that the District failed to implement the policy by training Cook on how to comply with the District's established policy. The Wilsons have provided evidence that the District never discussed the importance of documenting and reporting incidents of bullying, harassment, or physical violence. *Smith Dep.* at 43:21–46:14, Dkt. 35-10. There is also evidence that the District did not provide Cook any training prior to starting her first position with the District. *See Cook Dep.* at 27:12–15, Dkt. 28-4. And Cook stated that she was not provided training about administering discipline or documenting bullying incidents. *Id.* at 27:20–28:10. Under these facts, a reasonable jury could conclude that the District failed to train Cook on how to comply

with its policy. Thus, the Court will deny summary judgment for the District on Count III.

### B. Jennifer Cook

#### (1) Negligence and Negligent Supervision

Cook can only be liable for a claim under the ITCA if she was acting with criminal intent or if her conduct was reckless, willful, and wanton. Idaho Code § 6-904A(2); *Mareci v. Coeur D'Alene School Dist. No. 271*, 250 P.3d 791, 795 (Idaho 2011). There is no allegation or evidence of criminal intent. For purposes of the ITCA, "'reckless, willful and wanton conduct' is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result." Idaho Code § 6-904C(2). The applicable test for "reckless, willful and wanton conduct" is whether the person "'intentionally does or fails to do an act, knowing or having a reason to know facts that would lead a reasonable man to realize that his conduct not only creates unreasonable risk of harm to another, but involves a high degree of probability that such harm would result.'" *Harris v. State, Dept. of Health and Welfare*, 847 P.2d 1156, 1160 (Idaho 1992). "[T]he key element of this definition is the type of knowledge that implies an element of foreseeability. Under this standard, the type of harm incurred must be manifest or ostensible, and highly likely to occur." *Farnworth v. Ratliff*, 999 P.2d 892, 894 (2000). Foreseeability "contemplates more than the mere possibility of aggressive tendencies harbored by the state's ward." *Harris*, 847 P.2d at 1160.

Here, there is sufficient evidence that Cook had knowledge that E.R. would harm someone else. Before the incident with J.C.W., E.R. struck a young girl, argued with other students, threw a disruptive temper tantrum in the hall, threw a rock at teacher, and pushed or punched a paraprofessional. Additionally, E.R.'s teacher told Cook that Cook needed to take "drastic action" to address E.R.'s behavior. Cook took almost no action to discipline E.R. The only documented discipline was the meeting with Officer Madsen concerning the rock-throwing incident. Cook failed to document any other discipline of E.R., and E.R.'s teacher was unaware of any discipline that was imposed. Cook also allowed E.R. to go onto the playground when she knew there were only two adults monitoring the playground. Under these circumstances, a reasonable jury could find that Cook acted in a "reckless, willful, and wanton" manner, and the Court will deny summary judgment on counts I and III.

### (2) Intentional Infliction of Emotional Distress

In Idaho, a plaintiff must prove four elements to establish a claim of intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Curtis v. Firth*, 850 P.2d 749, 751 (1993). Summary judgment is only proper "when the facts allege conduct of the defendant that could not reasonably be regarded as so extreme and outrageous as to permit recovery for intentional or reckless infliction of

emotional distress." *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 741 (Idaho 2003).

The same facts discussed above regarding negligence also support the claim for intentional infliction of emotional distress. That is, there is evidence that Cook had knowledge that E.R. had increasingly aggressive behavior, E.R.'s teacher asked for drastic discipline of E.R. which did not occur, and E.R. was allowed on the playground with other children without sufficient adult supervision. These actions, or lack of action, allowed E.R. to stab J.C.W. in the eye causing blindness in that eye, which is severely distressful to both J.C.W. and his parents. Accordingly, the Court will deny summary judgment on the intentional infliction of emotional distress claim.

3.  **Section 1983 Claim**

Typically, the Fourteenth Amendment's Due Process Clause . . . "does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir.2011). The Ninth Circuit has recognized two exceptions to this rule: (1) the special relationship doctrine and (2) the "state-created danger" doctrine. *Id.*

Here, the Wilsons claim that the state-created danger exception applies. To determine whether the exception applies, the Court asks, "(1) whether any affirmative actions of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the [defendants] acted with deliberate indifference to that danger." *Willden*, 678 F.3d at 1002.

In evaluating whether Defendants affirmatively placed J.C.W. in danger, the Court must examine whether the Defendants "left [J.C.W.] in a situation that was more dangerous than the one in which they found him." *Id.* Courts "do not look solely to the agency of the individual, nor do [they] rest ... on what options may or may not have been available to the individual." *Id.* The Ninth Circuit has evaluated several cases in which plaintiffs alleged that a state actor's affirmative conduct placed them in heightened danger. The case law in this area shows "two defining principles": (1) there must be identifiable conduct by the state actor which rises to more than a mere failure to act, and (2) some contact or connection with the injured party that creates a causal connection between the state actor's conduct and the increased danger. *See Jamison v. Storm*, 426 F. Supp. 1144, 1154 (W.D. Wash. 2006).[1] Additionally, the danger needs to be towards the individual plaintiff and not to the general public. *Ketchum v. County of Alameda*, 811 F.2d 1243 (9th Cir. 1987).

Here, the alleged danger was to all of the children on the playground, and not a specific individual or small group. The Wilsons rely on *Schroeder v. San Diego Sch. Dist.*, 2009 WL 1357414 (S.D. Cal. May 13, 2009), which found that the school district

---

[1] *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (informing violent youth of molestation accusations after promising to notify plaintiff first without doing so and promising to provide police patrol without doing so); *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082, 1086 (9th Cir. 2000) (ejecting decedent from bar while he was drunk, thinly clothed, and could not drive himself home); *Penilla v. City of Huntington Park*, 115 F.3d 707, 708 (9th Cir. 1997) (moving medically distressed person indoors and calling off the paramedics); *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989) (stranding plaintiff in dangerous neighborhood late at night); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (assigning plaintiff to work alone with sexually violent inmate).

took affirmative action when they assigned a student with a history of discipline as a tutor in a small class of mentally disabled students. However, this case is distinguishable from *Schroeder* for several reasons. First, the classrooms in *Schroeder* were small, and the court specifically noted that the student would often be left alone with only one or two other students at a time. *Id.* at *3. Here, the number of students on the playground would have included many students – as is typical during any recess or break. Thus, the number of students that would be subject to any danger was quite large.

Second, the students in *Schroeder* were particularly vulnerable to the type of injury that occurred, and the administrators were aware of it. In *Schroeder*, the students were mentally disabled and particularly vulnerable to sexual assault. That is not the case here. Therefore, the Court finds that the state-created danger doctrine does not apply to this case, and the Court will grant summary judgment in favor of Defendants on Plaintiff's Due Process claims.

Because the Court finds that summary judgment is appropriate on these claims, it is unnecessary to address the related issues of qualified immunity or *Monell* liability. Likewise, the Court's grant of Summary Judgment on the Due Process claims renders moot Plaintiff's Motion for Leave to File First Amended Complaint to Include Punitve Damages Under § 1983 Claim. (Dkt. 29).

4.  **Motion to Strike Rory Jones Affidavit**

    The Court did not rely on the Jones Affidavit in any way. Therefore, the motion is moot.

# ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion to Amend (Dkt. 36) is **GRANTED.**

2. Plaintiffs' Motion to Amend for Punitive Damages (Dkt. 29) is deemed **MOOT.**

3. Defendants' Motion for Summary Judgment (Dkt. 28) is **GRANTED** as to Count Two. Defendants' Motion for Summary Judgment (Dkt. 28) is **DENIED** as to Count One, Three, and Six.

4. Defendants' Motion to Strike (Dkt. 40) is deemed **MOOT.**

DATED: August 29, 2017

B. Lynn Winmill
Chief Judge
United States District Court